FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**BY WEIMER, J.**:

2015-K-1949          STATE OF LOUISIANA v. ANDRE J. DAVIS (Parish of Orleans)

          That portion of the appellate court's opinion ruling that the elements
          of domestic abuse battery involving strangulation were unproven at
          trial is hereby reversed.  Noting that the defendant did not seek
          a writ to challenge the appellate court's opinion, we leave undisturbed
          the remainder of the opinion relating to other matters, including
          that portion finding that the district court failed to impose mandatory
          conditions on the defendant's probation for domestic abuse battery.
          This matter is remanded to the district court for further proceedings
          consistent with this opinion.
          REVERSED AND REMANDED.

# SUPREME COURT OF LOUISIANA

## NO. 2015-K-1949

## STATE OF LOUISIANA

## VERSUS

## ANDRE J. DAVIS

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER**, Justice.

We granted a writ to determine whether the appellate court erroneously applied the domestic abuse battery statute, La. R.S. 14:35.3. The appellate court determined there was insufficient evidence to support the defendant's conviction under the statutory provision requiring that an offender and victim be past or present members of the same household. As interpreted by the appellate court, La. R.S. 14:35.3 requires the state to show the offender and victim engaged in a relationship comparable to the civil law concept of "open concubinage."

We find that the appellate court's requirement that the state prove "open concubinage" between the victim and offender is not grounded in the statute. Moreover, the appellate court's requirement of proof of "open concubinage" thwarts the broader inquiry into the circumstances of the relationship intended by the legislature. For reasons that follow, we reverse the ruling of the appellate court and reinstate the trial court's ruling that the totality of evidence was sufficient to find the

victim and offender were part of the same household and, therefore, was sufficient to support the conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The defendant was charged by bill of information with one count of domestic abuse battery involving strangulation, in violation of La. R.S. 14:35.3. The defendant pleaded not guilty, and the case proceeded to a bench trial.

At trial, the state presented the testimony of Eugenia Leonard, who testified that on January 18, 2012, she was in an apartment she rented, and was caring for her six-week-old daughter. Also present in the apartment that day was the defendant, who is the father of Ms. Leonard's daughter. The defendant was partially clothed and reclining in the bedroom when Ms. Leonard approached him and asked him to watch the child while Ms. Leonard took a shower.

According to Ms. Leonard, the defendant refused to help, so she told him to leave the apartment. The defendant got out of bed and dressed. As the defendant left the bedroom and walked down the hallway, he pushed Ms. Leonard against the wall. Ms. Leonard was holding the child in her arms, and ran into the hallway bathroom. The defendant followed, grabbed Ms. Leonard by the neck and began choking her until she closed her eyes and fell to the floor, still holding her baby in her arms. When she opened her eyes, the defendant was standing in the bathroom doorway, but left the apartment soon afterwards.

Ms. Leonard explained that she and defendant had been involved in an intimate relationship for three or four years and had been to counseling to try to find a way to raise their daughter together. She stated that the defendant was a student

at a local university at the time and had moved out of his dormitory to stay with her. However, when the defendant refused to help take care of their daughter, she told him to leave because he did not pay any of the bills or contribute to the household.

The defendant took the stand and testified that at the time of the incident he did not want to have an intimate relationship with Ms. Leonard, but he did want to be present for his daughter. He stated that he was seeing other women at the time and Ms. Leonard was aware of this. The defendant claimed that when he tried to leave the bedroom, Ms. Leonard blocked him and pushed him back with her left arm as they argued about caring for the child. As he walked past her they continued to argue. Ms. Leonard then entered the bathroom while screaming at him. As he tried to enter the bathroom, Ms. Leonard pushed him and fell backwards onto the floor.

The defendant denied that he choked Ms. Leonard or put his hands on her neck. He further denied pushing Ms. Leonard and claimed he would never do anything to hurt her when she had his daughter in her arms. Defendant also disputed Ms. Leonard's testimony concerning their living arrangements. He claimed that at the time of the incident he had returned to living in a university dorm room. The defendant also testified that while he was not ordered to do so, he provided child support in the form of a Wal-Mart money card.

The district court found defendant guilty of domestic abuse battery involving strangulation and sentenced him to two years imprisonment at hard labor, suspended, and two years active probation.

When the appellate court vacated the defendant's conviction for domestic abuse battery, the court found there was insufficient evidence to support the conviction. According to the appellate court, the state failed to prove that defendant

and Ms. Leonard were household members as required under La. R.S. 14:35.3. The appellate court noted that domestic abuse battery is defined as "the intentional use of force or violence committed by one household member upon the person of another household member." La. R.S. 14:35.3. At the time this crime was committed in 2012, household member was defined as "any person of the opposite sex presently living in the same residence or living in the same residence within five years of the occurrence of the domestic abuse battery with the defendant as a spouse, whether married or not." La. R.S. 14:35.3(B)(2).[1]

The appellate court analogized the statutory definition of "household member" to the civil law concept of "open concubinage," which the court in **Petty v. Petty**, 560 So.2d 629 (La.App. 4 Cir. 1990), noted has been historically defined as "a relationship of sexual content in which man and woman live together as husband and wife in a state of affairs approximating marriage," although they are not legally married. **Petty**, 560 So.2d at 631 (quoting **Thomas v. Thomas**, 440 So.2d 879, 881 (La.App. 2 Cir. 1983)). Applying that definition of "open concubinage," the appellate court concluded that to prove defendant and the victim were living as unmarried "spouses," the state must prove:

> [S]ome of the indices of a marriage: for example, both parties had substantially all of their clothing at the same abode, both parties were receiving regular mail at the same address, both parties acted like they were actually married or held themselves out to the world as a married couple, et cetera.

**State v. Davis**, 15-0456, pp. 18-19 (La.App. 4 Cir. 9/23/15), 176 So.3d 580, 592.

---

[1] In 2015, the legislature amended the definition of household member to remove the phrase "or living in the same residence within five years of the occurrence of the domestic abuse battery" and replaced it with broader language stating that a household member is "any person of the opposite sex presently or formerly living in the same residence with the offender." (Emphasis added.) 2015 La. Acts 440, § 1.

The appellate court acknowledged there was an intimate relationship between the defendant and victim; however, the court found that the defendant was not living with the victim at the time of the incident. Applying its "open concubinage" standard, the appellate court further found no evidence that the victim and defendant had lived together as spouses. The court noted that there was no evidence that defendant kept personal items in the apartment, or had kept them there at any point in the relationship. The court further noted that the defendant did not contribute to household expenses. In the appellate court's view, "the evidence at trial does not establish beyond a reasonable doubt that the victims [sic] were living in open concubinage." **Davis**, 15-0456 at 18; 176 So.3d at 592.[2]

## DISCUSSION

The state contends the appellate court erred by vacating the defendant's domestic abuse battery conviction. According to the state, the appellate court misapplied the **Jackson v. Virginia**[3] standard for evaluating the sufficiency of the trial evidence and substituted its judgment for that of the trier of fact. The state argues that, based on the evidence adduced at trial, a rational trier of fact could have found that the defendant was a "household member" as defined by La. R.S. 14:35.3(B)(2). Central to the state's argument is that the appellate court equated "household member" with the civil law concept of "open concubinage," but "open concubinage" is an outdated concept and is not grounded in the statute.

---

[2] The appellate court was not unanimous in its reasoning. One judge in the three-judge panel did not ascribe to the opinion, but instead indicated "that on the facts of this case, the State failed to prove beyond a reasonable doubt that the defendant was a 'household member' within the meaning of La. R.S. 14:35.3." **Davis**, 15-0456 at 1, 176 So.3d at 600 (Landrieu, J., concurring).

[3] **Jackson v. Virginia**, 443 U.S. 307 (1979). The sufficiency of evidence standard from **Jackson** is discussed later in this opinion.

For his part, the defendant also points to the element of the crime requiring an offender to be a "household member." La. R.S. 14:35.3(B)(2). While not directly arguing in favor of the appellate court's "open concubinage" interpretation of the statute, the defendant nevertheless argues the appellate court reached the correct result. Emphasizing the statute's use of the phrase "living in the same residence," the defendant points to repeated instances in the trial record where the victim and the defendant each testified that the defendant had been "staying in" the victim's residence. In essence, the defendant argues "staying in" is different from "living in" the residence, and evidence of "staying in" the victim's residence is insufficient to meet the requirement that the offender has attained the status of "household member" under La. R.S. 14:35.3(B)(2).

Although the state and defendant take different approaches, common to both litigants is that their arguments hinge on the definition of "household member" in La. R.S. 14:35.3(B)(2). We turn, therefore, to the issue of how the term "household member" should be construed.

We begin, as we must, with the language of the statute itself. <u>See</u> La. R.S. 1:3 [4] When this crime was committed in 2012, household member was statutorily-defined, in pertinent part, as "any person of the opposite sex presently living in the same residence or living in the same residence within five years of the occurrence of the domestic abuse battery with the defendant as a spouse, whether married or not." La. R.S. 14:35.3(B)(2).

_____

[4] "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

Before reaching the meaning of these words, we observe that the definition contains two clauses separated by the word "or." Because the word "or" is normally disjunctive,[5] each clause potentially offers a separate definition of "household member." It may be possible to construe "household members" as either "any person of the opposite sex presently living in the same residence" (relying solely on the first clause) or, alternatively, as "any person of the opposite sex ... living in the same residence within five years of the occurrence of the domestic abuse battery with the defendant as a spouse, whether married or not" (relying solely on the second clause). That is, if the state relied solely on the first clause, the argument could be made that the first clause does not require proof of the victim "living ... with the defendant as a spouse, whether married or not," because the language just quoted comes after the word "or." Therefore, if the defendant and the victim were living together at the time of the domestic abuse battery and the provision is interpreted in that manner, it may not, in fact, matter whether they were doing so as "spouses, whether married or not" at the time. However, the state has conceded that it is relying on the second clause, which requires proof of the victim "living ... with the defendant as a spouse, whether married or not." La. R.S. 14:35.3(B)(2). Focus, then, is placed on the meaning of the second clause.

Pursuant to the legislature's interpretive directions, the first step in our analysis is to determine if "living ... with the defendant as a spouse, whether married or not" in La. R.S. 14:35.3(B)(2) refers to a technical term under the law. If La. R.S. 14:35.3(B)(2) refers to a technical term, then that portion of the statute "shall

---

[5] "Unless it is otherwise clearly indicated by the context, whenever the term 'or' is used in the Revised Statutes, it is used in the disjunctive and does not mean 'and/or.'" La. R.S. 1:9.

be construed and understood according to such peculiar and appropriate meaning" as the technical term to which it refers. La. R.S. 1:3.

"Married" and "spouse" are technical terms, and there are very specific formal requirements for a marriage to exist.[6] If the defendant and victim had indeed been married, it seems beyond debate that the relationship element of La. R.S. 14:35.3(B)(2) would be met, as long as the evidence showed that the victim had been "living in the same residence within five years of the occurrence of the domestic abuse battery with the defendant as a spouse."

However, the legislature indicated that the relationship element is satisfied "whether married <u>or not</u>." (Emphasis added.) La. R.S. 14:35.3(B)(2). In searching for intent, we are bound to give meaning to every word the legislature has used. See La. R.S. 1:4[7]. Accordingly, from the words "whether married or not," we find that the legislature intended the relationship element in La. R.S. 14:35.3(B)(2) to be satisfied without evidence showing every specific formal requirement of a marriage. That is, the legislature intended both marriage, and something akin to but short of marriage.

The appellate court's ruling that "open concubinage" was intended by the phrase "whether married or not" is not supported by La. R.S. 14:35.3(B)(2) or by the meaning of "concubinage." The term "concubinage" itself is a technical term, but is archaic, as it no longer appears in the Civil Code. *Cf.* Kathryn Venturatos Lorio, *Roman Sources and Constitutional Mandates: The Alpha and Omega of Louisiana*

---

[6] See La. C.C. art. 86 ("The relationship [of marriage] and the contract are subject to special rules prescribed by law.").

[7] "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."

*Laws on Concubinage and Natural Children*, 56 La. L. Rev. 317, 331 (1995) ("Few remnants remain of the laws of concubinage and illegitimate children in Louisiana. The restriction on donations to concubines is no longer a part of Louisiana law."). Moreover, when concubinage was a significant concept, concubinage was defined in opposition to marriage, not consistent with marriage. See *id.* 56 La. L. Rev. at 323 ("In Louisiana, [concubinage] is not necessarily a monogamous relationship. ... [I]t was possible for a man to have a legal wife in one residence and a concubine in another.") (Footnote omitted.)

As observed earlier, by employing the phrase "whether married or not" in La. R.S. 14:35.3(B)(2), the legislature intended both marriage and something akin to but short of marriage. It was error, therefore, for the appellate court to rely on the technical concept, concubinage, which is unrelated to the concept of marriage and, indeed, is defined in opposition to marriage. See La. R.S. 1:3. Moreover, in **Petty**, 560 So.2d at 631, on which the appellate court relied, the court indicated: "although living together is important to a finding of concubinage, it is not absolutely essential." In contrast, under La. R.S. 14:35.3(B)(2), living together during any point within five years of the offense is required. This difference between the technical meaning of concubinage (in which living together is not required) and La. R.S. 14:35.3(B)(2) (in which living together is required) further highlights the appellate court's error in relying on concubinage to interpret La. R.S. 14:35.3(B)(2).

Because the legislature has chosen not to rely on a technical term, it was appropriate for the factfinder at trial to draw on ordinary experience to determine whether the household relationship element of the offense had been met. See **State**

**v. Stowe**, 93-2020 (La. 4/11/94), 635 So.2d 168, 170-72.[8]  In turn, an appellate court's proper role is:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); **State v. Sylvia**, 01-1406, p. 2 (La.4/9/03), 845 So.2d 358, 361; **State v. Captville**, 448 So.2d 676, 678 (La. 1984).   Therefore, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proved beyond a reasonable doubt.  **Sylvia**, 01-1406 at p. 2-3, 845 So.2d at 361; **Captville**, 448 So.2d at 678.

**State v. Johnson**, 03-1228, p. 4 (La. 4/14/04), 870 So.2d 995, 998.

The following evidence, germane to the relationship between the defendant and Ms. Leonard, was adduced at trial.   The defendant and Ms. Leonard began a sexually intimate relationship in 2009.   The two met at a local university that both were attending.   Because the defendant did not have a car but Ms. Leonard did, she often provided the defendant transportation to the university.   According to Ms. Leonard, at some point, the defendant moved out of the university dormitory to stay with her.

By the time of the incident on January 18, 2012, Ms. Leonard had given birth to the defendant's child, who was then about six weeks old.   Ms. Leonard and the defendant attended counseling, which was focused on raising their daughter.

---

[8]  In **Stowe**, the defendant challenged the sufficiency of evidence in a second degree battery case, contending the state had failed to prove the victim suffered the element of "extreme physical pain." **Stowe**, 635 So.2d at 170 (citing La. R.S. 14:34.1).   This court noted it had determined in an earlier case that "'extreme physical pain' ... 'describes a condition which most people of common intelligence can understand.'"  **Stowe**, 635 So.2d at 171 (quoting **State v. Thompson**, 399 So.2d 1161, 1168 (La. 1981)).   Consistent with the determination that "extreme physical pain" was subject to common understanding, this court then found the evidence describing the victim's experience of being hit in the face, along with photographs of the victim and testimony of an eyewitness, sufficiently established the element of "extreme physical pain" to support the battery conviction.   See **Stowe**, 635 So.2d at 171-72.

The day of the incident, Ms. Leonard and the defendant were in the apartment Ms. Leonard rented. Ms. Leonard asked the defendant to help by watching the child while Ms. Leonard took a shower. The defendant was partially clothed and reclining in the bedroom. The defendant refused to watch the child, and Ms. Leonard told him to leave. She explained: "I felt like, if he didn't want to help me and he wasn't working and he didn't help me out with the baby and I paid all the bills in the house, then just go. If you are not going to contribute to the household, then leave." The defendant did not promptly leave and, instead, engaged in the violent encounter for which he stands convicted.[9]

After enduring the violent encounter with the defendant in the bathroom, according to Ms. Leonard, she called the defendant's parents. She explained: "I thought ... if I told somebody–if I told his parents, then he would leave." According to the defendant, it was he who called his parents after the incident. By the time of trial, Ms. Leonard and her child had moved in with the defendant's family.

Viewed in the light most favorable to the prosecution as required by the **Jackson** standard, the evidentiary record reasonably supports the conclusion that Ms. Leonard had been "living in the same residence within five years of the occurrence of the domestic abuse battery with the defendant as a spouse, whether married or not." La. R.S. 14:35.3(B)(2). The evidence shows an ongoing intimate relationship for at least three years and that Ms. Leonard and the defendant had a child together. While the defendant denied Ms. Leonard's claim that he was staying in the apartment at the time of the offense, viewed most favorably to the prosecution,

---

[9] The defendant does not challenge the appellate court's finding that he committed a simple battery upon Ms. Leonard. The dispute in the present case is confined to whether the household relationship element was met to support the conviction for domestic abuse battery, a more weighty offense than simple battery.

the evidence supports Ms. Leonard's claim. Ms. Leonard testified to an expectation that the defendant would contribute to their common household, and the defendant testified that he was intent on contributing to their child's welfare, in terms of both parenting activities and finances. Immediately prior to the battery incident, the defendant was partially clothed and reclining in the bedroom, which demonstrates he was very familiar with and comfortable within the household. Furthermore, the argument between Ms. Leonard and the defendant just prior to the battery incident was premised on Ms. Leonard's view that the defendant was not meeting his obligations to the household. With both Ms. Leonard and the defendant claiming to have called the defendant's parents about the incident, it is reasonable to infer that both recognized their relationship was akin to a marriage in that both Ms. Leonard and the defendant were part of a larger family.

Although the appellate court erroneously latched onto the archaic concept of "open concubinage," the general approach of looking to the civil law was sound. It is true that at trial, the factfinder could draw on ordinary experience to ascertain whether the evidentiary record established a household arrangement that was similar to marriage. See **Stowe**, 635 So.2d 168,170-72. However, to the extent any further guidance was necessary, either at trial or on appeal, it would have been appropriate to also consider the record in light of the civil law on marriage, while bearing in mind that the legislature required only a relationship similar to marriage. Here, providing resources for living, bringing a child into the world, and sharing child rearing responsibilities–as Ms. Leonard and the defendant are depicted when viewing the evidence in the light most favorable to the prosecution–are also described in the Civil Code as some of the incidents of marriage. See La. C.C. art. 98 (describing mutual duties of married persons, including "fidelity, support, and

12

assistance") and La. C.C. art. 99 ("Spouses mutually assume the moral and material direction of the family, exercise parental authority, and assume the moral and material obligations resulting therefrom.").

As a final point in our analysis, we return to the defendant's argument that, because both Ms. Leonard and the defendant described their relationship in terms of "staying with" each other, the definition of "household" contained in La. R.S. 14:35.3(B)(2) is unmet. The crux of the defendant's argument is that La. R.S. 14:35.3(B)(2) defines household in terms of a couple "living in the same residence" with each other, rather than "staying with" each other.[10] This argument lacks merit. There is no requirement that witnesses use the exact language in a statute for a court to determine that the conditions in the statute have been met. The defendant does not argue, and we do not find, that "living in the same residence" is a technical term. Pursuant to La. R.S. 1:3, in the absence of technical terminology, statutory "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." Similarly, pursuant to La. R.S. 14:3, "all of [the] provisions [of the Criminal Code] shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." Following the principles of La. R.S. 1:3 and La. R.S. 14:3, we have no difficulty in determining

_____

[10] The defendant supports his grammatical argument with a dictionary definition, of uncertain attribution, by which "stay" means to "live somewhere temporarily as a visitor or guest." However, noting the defendant testified that he was "staying on campus" in "a dorm room at the time" of the incident, the defendant's grammatical argument is self-defeating. **[R 71]** By the defendant's reasoning, he would have been a mere visitor or guest in his own dorm room. Relatedly, even though Ms. Leonard testified the defendant had no dorm room at the time, but the defendant testified he did, under the **Jackson** standard, we resolve their dispute in the light most favorable to the prosecution, *i.e.*, that the defendant had no dorm room at the time of the incident.

that the witnesses' testimony that they were "staying with" each other is synonymous with "living in the same residence" under La. R.S. 14:35.3(B)(2).

## DECREE

That portion of the appellate court's opinion ruling that the elements of domestic abuse battery involving strangulation were unproven at trial is hereby reversed. Noting that the defendant did not seek a writ to challenge the appellate court's opinion, we leave undisturbed the remainder of the opinion relating to other matters, including that portion finding that the district court failed to impose mandatory conditions on the defendant's probation for domestic abuse battery. This matter is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.

14