# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 23-604

**STATE OF LOUISIANA**

**VERSUS**

**CURTIS WHITE, JR.**

**A/K/A CURTIS RAY WHITE, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 128344-F
HONORABLE MARCUS L. FONTENOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Trent Brignac**
**Evangeline Parish District Attorney**
**Chauncey J. Hesnor**
**Jacob B. Fusilier**
**Assistant District Attorneys**
**13th Judicial District**
**Post Office Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**600 Jefferson Street, Suite 903**
**Lafayette, LA 70501**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Curtis White, Jr.**

**STILES, Judge.**

On February 24, 2023, Defendant Curtis White, Jr. was charged by an amended bill of information with domestic abuse battery child endangerment, in violation of La.R.S. 14:35.3(I), and second degree robbery, in violation of La.R.S. 14:64.4. A jury found Defendant guilty as charged on March 1, 2023. On July 6, 2023, the trial court sentenced Defendant to twenty-five years at hard labor for second degree robbery and three years at hard labor for domestic abuse battery child endangerment. It was ordered that these sentences run concurrently with one another, but consecutive to any other sentence Defendant may be presently serving.

Defendant has appealed his convictions for both domestic abuse battery child endangerment and second degree robbery and has appealed his sentence for second degree robbery.[1] For the following reasons, we affirm Defendant's convictions and sentence.

## FACTS AND PROCEDURAL HISTORY

On May 17, 2022, Defendant, his girlfriend, Erin Marcantel, and her eight-year-old daughter were in Ms. Marcantel's house in Grand Prairie, Louisiana.[2] Defendant and Ms. Marcantel were involved in an argument, and as Ms. Marcantel emerged from the bathroom with a bag of Defendant's clothes, Defendant punched her in the face, breaking her nose. He then asked Ms. Marcantel for the keys to her 2019 Nissan Altima, making it clear that he would hurt her further if she refused. She gave him the keys. Defendant then took Ms. Marcantel's cell phone and her

---

[1] Defendant does not challenge his sentence for domestic abuse battery child endangerment.

[2] Some testimony suggested there may have also been a sleeping baby in the house.

daughter's cell phone. Ms. Marcantel told her daughter to go next door to Ms. Marcantel's parents' home, but Defendant prevented her daughter from leaving.

Defendant then went outside, followed by Ms. Marcantel who asked for her cell phones and keys back. Defendant returned the cell phones to Ms. Marcantel but kept the keys. He told Ms. Marcantel that he would not take her car if she would drive him to Alexandria. When she refused, he drove away in Ms. Marcantel's car. Defendant was subsequently arrested by the Alexandria Police Department at a motel. At the time of his arrest, he gave the police officers the keys to Ms. Marcantel's car, which was parked in a nearby parking lot.

On June 8, 2022, Defendant was initially charged by bill of information with domestic abuse battery child endangerment, in violation of La.R.S. 14:35.3(I), and carjacking, in violation of La.R.S. 14:64.2. An amended bill of information filed on February 24, 2023, again charged Defendant with domestic abuse battery child endangerment, but the charge of carjacking was changed to second degree robbery, in violation of La.R.S. 64.4.

A jury was selected on February 27, 2023. The jury heard evidence and argument on February 28 and March 1, 2023, ultimately finding Defendant guilty of both domestic abuse battery child endangerment and second degree robbery. The State moved for a pre-sentence investigation, which was ordered by the court, and a sentencing hearing was scheduled for July 6, 2023.

On July 6, 2023, Defendant appeared before the trial court for sentencing. Defense counsel moved for a continuance, arguing that he had only recently been appointed to represent Defendant and needed additional time to prepare and potentially file post-trial motions. The State opposed any continuance of the sentencing hearing. The trial court denied defense counsel's motion to continue,

2

finding that the public defender's office had adequate time to prepare for the hearing which had been scheduled for approximately four months. The State and defense counsel then presented arguments for Defendant's sentencing, after which the trial court sentenced Defendant to serve twenty-five years at hard labor for second degree robbery and three years at hard labor for domestic abuse battery child endangerment. The trial court ordered these sentences to run concurrently with one another, but consecutive to any other sentence Defendant may be presently serving.

Defendant has appealed, asserting five assignments of error:

I.     The State failed to sufficiently prove that Curtis White, Jr. was guilty of second-degree robbery.

II.    The trial court erred in denying the defense's objection to the jury instruction for second-degree robbery. The defense properly objected to an instruction that erroneously included additional elements in the definition of second-degree robbery. Specifically, the jury was instructed that second-degree robbery included the use of "force or intimidation . . . to accomplish the taking," which are not elements of this crime.

III.   The State failed to sufficiently prove that Curtis White, Jr. was guilty of domestic abuse battery child endangerment.

IV.   The 25-year sentence at hard labor for second-degree robbery is constitutionally excessive.

V.    The trial court erred in denying newly appointed defense counsel's reasonable request for a temporary continuance to familiarize himself with the case and file post-trial motions. He was appointed a short time before the sentencing hearing and had identified issues to raise in a motion for a new trial, but the trial court did not give counsel time to prepare or be effective.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

3

## ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE

### Insufficient Evidence

As Defendant's assignments of error numbers one and three both raise the argument that insufficient evidence was presented at trial to convict Defendant of the charges, we will address these two assignments together before addressing Defendant's assignment of error number two.

When sufficiency of the evidence is challenged, the analysis is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct.195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

### Second Degree Robbery

In his first assignment of error, Defendant argues that the State failed to prove him guilty of second degree robbery, as there was no nexus between the infliction of serious bodily harm upon the victim and the taking of the victim's car. Defendant argues there was a temporal gap between the injury and the taking. According to Defendant, the infliction of serious bodily injury and the taking must be effectively simultaneous to violate the second degree robbery statute.

The controlling statute, La.R.S. 14:64.4, defines second degree robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury." Defendant focuses on the word "when" to support his argument that the injury and the taking must be virtually simultaneous. However, he cites no jurisprudence to support his argument. Instead, he refers to the facts of the case, summarized above, and argues that pursuant to said facts, there was no nexus between the infliction of serious bodily injury upon the victim, Ms. Marcantel, and the taking of her car.

We find that the nexus between the injury and the taking is illustrated in the trial testimony Defendant cites in his brief. It is clear that Ms. Marcantel would not have relinquished her car keys if Defendant had not already broken her nose. Ms. Marcantel testified to the following at trial:

Q:      The medical records indicate a non-displaced fracture of the – of the distal nasal bridge.

A:      Yes.

Q.      Okay. That's punched in the nose, correct?

A:      Correct.

Q.      Alright. Um, now he… then after he punched you what happened next?

A:      He, um, asked for my keys.

Q.      Okay. To a 2019 Silver, Nissan Altima?

A:      Correct.

Q:      That car is your car- is your car?

A:      Yes. It was.

Q:      Okay. Did you want to give him the keys?

A: No.

Q: Alright, um…

A: He told me if I didn't give them to him, he would hurt me.

Q: Okay. So, he threatened you with further harm after punching you in the nose if you didn't give him the keys?

A: Correct.

While we have not found a case on point, there is jurisprudence regarding another robbery statute, La.R.S. 14:64, i.e., armed robbery. Although that statute proscribes a taking "while armed with a dangerous weapon," Louisiana courts have stated that the use of a weapon at any point in the continuous course of a robbery, even after the taking, can constitute armed robbery. *See, e.g., State v. Brown*, 11-363 (La.App. 1 Cir. 9/14/11), 77 So.3d 297, *writ denied*, 11-2293 (La. 3/9/12), 84 So.3d 550. This is because the use of the weapon even after the taking facilitates the taking. Similarly, the injury inflicted in the present case by Defendant on Ms. Marcantel clearly facilitated the taking of her keys, and thereby, her car.

Based on our discussion above, we find that, viewing the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of second degree robbery were proved beyond a reasonable doubt. This assignment of error is therefore without merit.

***Domestic Abuse Battery Child Endangerment***

In his third assignment of error, Defendant argues that the evidence adduced by the State did not support his conviction for domestic abuse battery child endangerment. The controlling statute, La.R.S. 14:35.3, states, in pertinent part:

A. Domestic abuse battery is the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member.

6

B. For purposes of this Section:

. . . .

(5) "Household member" means any person presently or formerly living in the same residence with the offender and who is involved or has been involved in a sexual or intimate relationship with the offender, or any child presently or formerly living in the same residence with the offender, or any child of the offender regardless of where the child resides.

. . . .

I. This Subsection shall be cited as the "Domestic Abuse Child Endangerment Law". Notwithstanding any provision of law to the contrary, when the state proves, in addition to the elements of the crime as set forth in Subsection A of this Section, that a minor child thirteen years of age or younger was present at the residence or any other scene at the time of the commission of the offense, the offender, in addition to any other penalties imposed pursuant to this Section, shall be imprisoned at hard labor for not more than three years.

Defendant argues that the evidence did not demonstrate that he was a "household member" because it did not demonstrate that he was "living" in the victim's, Ms. Marcantel's, residence.

The State has replied to Defendant's argument by citing testimony that Defendant did live at Ms. Marcantel's residence "off and on" and had lived there in the past. For example, Ms. Marcantel testified:

Q: Okay. Um, do you know the defendant Curtis White, Jr.?

A: Yes, I do.

Q: How do you know him?

A: We were in a relationship.

Q: An intimate relationship?

A: Yes.

Q: Okay, a sexual relationship?

A:     Yes.

Q:     Uh, y'all had dated at one point?

A:     Yes.

Q:     Kind of off and on?

A:     Yes.

Q:     Did the defendant ever live in the household with you?

A:     Yes, he do [sic].

Q:     Okay. Um, did he live with you consistently or was it kind of…

A:     On and off.

Q:     On and off, but he did live there, right?

A:     Yes.

Q:     Okay. Um, at the time the defendant lived with you did your daughter live with you?

A:     Yes.

. . . .

Q:     And he was a domestic partner or a boyfriend, an on and off again boyfriend, correct?

A:     Correct.

Q:     And your [sic] absolutely certain that he did live with you at some point in time.

A:     I'm absolutely certain. His wife knows it and I have family that knows it.

When questioned on cross-examination, Ms. Marcantel further testified:

Q:     You said that, uh, y'all lived together on and off…

A:     Yes, we do…

Q:     Uh, so, how long did he, uh, stay at your house? At a time?

A:     He stayed at my house months at a time.

8

Q: How many months?

A: Consecutively, at least three months.

. . . .

Q: Um, was he going back and forth to Alexandria at the time?

A: He would go back and forth but he was not living in Alexandria.

Q: Is that according to your definition of living? In Alexandria?

A: He had no home in Alexandria. He had no residence at that time.

Q: When he… how did he get to your house?

A: By me and my vehicle.

Both Defendant and the State cite in their briefs *State v. Davis*, 15-1949, pp. 12–14 (La. 3/15/17), 221 So.3d 28, 36 (footnote omitted), which discussed a previous version of La.R.S. 14:35.3:

> As a final point in our analysis, we return to the defendant's argument that, because both Ms. Leonard and the defendant described their relationship in terms of "staying with" each other, the definition of "household" contained in La. R.S. 14:35.3(B)(2) is unmet. The crux of the defendant's argument is that La. R.S. 14:35.3(B)(2) defines household in terms of a couple "living in the same residence" with each other, rather than "staying with" each other. This argument lacks merit. There is no requirement that witnesses use the exact language in a statute for a court to determine that the conditions in the statute have been met. The defendant does not argue, and we do not find, that "living in the same residence" is a technical term. Pursuant to La. R.S. 1:3, in the absence of technical terminology, statutory "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." Similarly, pursuant to La. R.S. 14:3, "all of [the] provisions [of the Criminal Code] shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." Following the principles of La. R.S. 1:3 and La. R.S. 14:3, we have no difficulty in determining that the witnesses' testimony that they were "staying with" each other is synonymous with "living in the same residence" under La. R.S. 14:35.3(B)(2).

9

We find that the State adduced testimony that Defendant was living with and had formerly lived with Ms. Marcantel. Defendant's argument is an attempt to discuss a nuance that does not exist, as the defendant attempted to do in *State v. Davis*, 221 So.3d 28. There is no such nuance or problem of legal interpretation in this case. Ms. Marcantel's plain testimony that Defendant was living with her, albeit "off and on," supported Defendant's conviction for Domestic Abuse Battery Child Endangerment.

As this was the only point Defendant contested under this assignment, we find that this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that the trial court erred by denying his objection to the jury instructions regarding second degree robbery.

At the end of Defendant's trial and prior to the trial court reading its instructions to the jury, defense counsel objected to the inclusion of "force and intimidation" as an element of second degree robbery. The trial court overruled the objection, providing the following instruction to the jury concerning second degree robbery:

> The defendant is charged with Second Degree Battery… Second Degree Robbery of Erin Marcantel. Second Degree Robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury. The phrase, anything of value must be given the broadest possible construction including any conceivable thing of the slightest value. Thus, in order to convict the defendant of Second Degree Robbery you must find; Number one that the defendant intentionally took something of value belonging to another. And Number two, that the thing of value taken was in the possession or immediate control of Erin Marcantel when it was taken. **Number three, that the defendant used force or intimidation against Erin Marcantel in order to accomplish the taking.** Number four, that the defendant acted with the specific intent to inflict serious

bodily injury upon Erin Marcantel. And Number five, that Erin Marcantel suffered serious bodily injury.

(Emphasis added). The State agrees in its appellee brief that an error occurred, at least as far as the inclusion of "intimidation," however, it argues that the error was harmless.

While we have found no case directly on point, we note that the State has cited supreme court jurisprudence regarding error in criminal jury instructions:

> [A]ll constitutional errors are not structural and indeed, most are amenable to harmless error analysis. *Sullivan* [*v. Louisiana*], 508 U.S. [275] at 278-79, 113 S.Ct. [2078] at 2081 [(1993)], (citing to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction. E.g., *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *State v. West*, 568 So.2d 1019 (La.1990)(following *Rose*). The determination is based upon "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan*, 508 U.S. at 279, 113 S.Ct. at 2081; *State v. Bourque*, 622 So.2d 198, 241 n. 20 (La.1993)(citing *Sullivan*). As repeatedly stated by the United States Supreme Court, "[a] defendant is entitled to a fair trial but not a perfect one." E.g., *Bruton v. United States*, 391 U.S.123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968).
>
> The Third Circuit misinterprets *Sullivan*. An improper definition of reasonable doubt permeates an entire verdict in that the jury has applied the wrong standard in judging the defendant on each and every element and a reviewing court has no way of discerning whether or not the jury would have found the same elements had they applied the proper standard.
>
> Conversely, the erroneous instruction at issue merely added the improper additional element of "intent to inflict great bodily harm" along with the proper "intent to kill." The jury is thus presented with the proper standard and may not be presented with evidence which could support the improper element. In such a circumstance a reviewing court, following *Sullivan*, 508 U.S. at 279, 113 S.Ct. at 2081 can determine if the verdict is unattributable to the erroneous instruction. Therefore, this error is not of such magnitude as to vitiate all jury findings and may well have had no effect whatsoever.

Because the erroneous instruction at issue may be an irrelevancy and because a reviewing court can make this determination, the error is not structural such as that in *Sullivan*, but rather a trial error which may or may not have prejudiced defendant and thus is subject to harmless error analysis, or in the case of an ineffective assistance claim, an analysis of whether defendant was prejudiced by the error.

*Ineffective Assistance.*

To prevail in a post-conviction ineffective assistance of counsel claim, the defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that but for counsel's inadequate performance the outcome of the trial court would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Washington*, 491 So.2d 1337, 1339 (La.1986).

The first prong is easily met here as the rule of [*State v.*] *Butler* [322 So.2d 189 (La. 1975)] is well-established with over twenty years duration and a reasonably competent attorney would know of it and properly object when presented with the instant erroneous instruction.

As to the second prong, whether defendant was harmed or prejudiced by counsel's error, we agree with Judge Sullivan's analysis articulated in his dissent to the court of appeal's grant and order for new trial. The jury in this case was presented with a binary choice between the State's version of what occurred and the defendant's. The defendant testified that he and the victim were struggling over the gun when it accidentally discharged twice. The State argued and presented sufficient evidence to show that the defendant entered with the intent to kill the victim but failed to complete his plans. *State v. Hongo*, 625 So.2d 610 (La.App. 3d Cir. 1993), *writ denied*, 631 So.2d 1163 (La.1994). There was no argument or evidence presented to the jury which would support a finding that the defendant had the intent to only inflict great bodily harm. Indeed, given only the two versions that were presented, no reasonable jury could have concluded that defendant had the intent to only inflict great bodily harm. Thus, the court's erroneous inclusion of intent to inflict great bodily harm did not prejudice the defendant, nor would its omission have affected the verdict.

*State v. Hongo*, 96-2060, pp. 4–6 (La. 12/02/97), 706 So.2d 419, 421–22 (footnotes omitted).

The State also noted a more recent supreme court case which discussed *Hongo*:

In *State v. Hongo*, we held that an erroneous jury instruction which, in violation of Louisiana law, improperly includes intent to

12

> inflict great bodily harm as an element of attempted second degree murder is subject to the harmless error analysis. 96-2060 (La.12/02/97), 706 So.2d 419. We held that "an invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction." *Id.* at 421. "The determination is based upon 'whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* (Citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 So.Ct. 2078, 124 L.Ed.2d 182 (1993)).

*State v. Bishop*, 01-2548, p. 7 (La. 1/14/03), 835 So.2d 434, 439.

Pursuant to the court's analysis in *Hongo*, 706 So.2d 419, we find that the evidence of second degree robbery presented at Defendant's trial was strong, as discussed above in Defendant's first assignment of error. It is clear that Defendant committed a taking of Ms. Marcantel's vehicle and facilitated said taking by seriously injuring her.

We note that Defendant has cited *State v. Porter*, 626 So.2d 476 (La.App. 3 Cir. 1993), in which this court reversed and remanded a conviction for second degree murder due to a faulty jury instruction. As the concurrence in that case explained, the record evidence did not facially demonstrate that the defendant intended to murder anybody; thus, the incorrect instruction in that case might have led to an erroneous conviction. In the present case, Defendant makes a specific argument that intimidation forms no part of second degree robbery. In his view, if the conviction was based on the jury's belief that the taking was facilitated by the victim's fear of further pain—in other words, because she was intimidated—then his conviction was invalid. We disagree with this argument, for the reasons discussed above under Defendant's first assignment of error. The controlling statute, La.R.S. 14:64.4, proscribes a situation in which the infliction of serious bodily injury is employed to effect a taking. The evidence adduced at trial clearly shows that was the scenario

that happened in the present case. Pursuant to *Hongo*, 706 So.2d 419, we find that no reasonable jury could have concluded otherwise.

For the reasons discussed, we find that this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, Defendant argues that his twenty-five year sentence for second degree robbery is excessive. Although Defendant objected to the sentence at the sentencing hearing, he acknowledges that he did not file a motion to reconsider sentence. He now requests a review of the sentence for constitutional excessiveness.

We note that the sentencing range for second degree robbery is three to forty years at hard labor. La.R.S. 14:64.4(B). Thus, Defendant's sentence of twenty-five years at hard labor is well within the statutory range.

The failure to file a motion to reconsider sentence precludes appellate review of arguments related to the sentence. Specifically, La.Code Crim.P. art. 881.1 provides, in pertinent part:

> A.(1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from arguing any ground not raised in the motion on appeal or review.

At the sentencing hearing, Defendant's attorney simply stated, "just note the defense's objection to the sentencing," without arguing any specific grounds upon

which the objection may have been based. As acknowledged by Defendant in his brief, no motion to reconsider sentence was filed.

Furthermore, this court does not address issues that were not first presented to the trial court. Uniform Rules—Courts of Appeal, Rule 1–3. No argument was presented to the trial court at the sentencing hearing in support of defense counsel's objection to the sentences. Nor was any motion filed in the trial court challenging Defendant's sentence.

For these reasons, we decline to review Defendant's sentence for excessiveness as it is not properly before us.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth and final assignment of error, Defendant argues that the trial court erred by denying the request made by his more recently appointed counsel, Paul Barker, to continue the sentencing hearing.

At the close of Defendant's trial on March 1, 2023, the trial court scheduled a sentencing hearing for July 6, 2023. Defendant received notice of this hearing in open court. At the July 6 hearing, the following colloquy occurred:

BY THE COURT

     Mr. Barker, wait. Come up to the podium or to the chair.

BY MR. BARKER

     Your honor, at this time, we're filing in the record a motion, uh, to continue sentencing. Uh, as the court's maybe … may or may not be aware, the public defender who was representing Mr. White at trial is no longer employed with the public defender's office. I have been only recently contracted to handle this matter, uh, and to attempt to flush out some post-trial issues that would be right to be considered a Motion for New Trial. Um, as stated in the Motion to Continue Sentencing that I'm filing, I have not had sufficient time to flush out those motions. There are, uh, several, uh, issues that I have been, uh, identified that I think would be, uh, important to be heard a Motion for New Trial. Uh, and for those reasons, we are seeking a content… uh, a continuance of this

sentencing that is set for today, uh, to allow me time to properly draft and file a Motion for New Trial.

BY THE COURT

Mr. Fusilier.

BY MR. FUSILIER

State opposes, and we are in a position to go forward with sentencing, Judge. I don't oppose Mr. Barker, as I wanted to say earlier, I wanted to give him a fair opportunity to file and argue what he wants to argue, Judge. But the State's position is we feel that, um, there is a significant gap between the Jury's Verdict and the Sentencing Hearing. And the PDO could have hired Mr. Barker, you know, sixty or ninety days ago whatever…

BY THE COURT

Madam Clerk, do you have the date the Jury returned its verdict?

BY THE MINUTE CLERK

February 28th, uh, would you like the minutes?

BY THE COURT

Yes, please.

BY MR. BARKER

And your honor, it… just to respond to that, um, it's not as though Mr. White is out on the street at this time. He is incarcerated. There's no delay in, uh, administration of justice by having him sentenced at a later date. It's not like he's going to walk free today if we don't have him sentenced. It's simply letting him sit where he is for a bit longer to allow me the opportunity to properly develop these post-trial issues that would most likely turn into post-conviction issues at a later time if they aren't heard at this time.

BY THE COURT

Okay, my records and the clerk's records reflect that on March 1, 2023, Mr. White was convicted, and a sentence was set… sentencing was set for July 6th, that's at least four months. Uh, I think it's ample time at that time the PDO was present, he was represented by the PDO at trial, that's ample time to prepare so your motion is denied.

16

BY MR. BARKER

Just note the objection.

BY THE COURT

So, noted. Where's Mr. White? Let's get Mr. White in. Good morning, Mr. White, let the record reflect that Mr. White is present with counsel, um, Mr. White did you have an opportunity to visit with counsel before the hearing this morning?

BY MR. WHITE

Yes sir.

BY THE COURT

Okay. And counsel you've had the opportunity to visit with Mr. White?

BY MR BARKER

Yes, your honor.

On appeal, Defendant makes arguments similar to those he made in the trial court in both his motion to continue and in oral argument. In the course of his argument, appellate counsel refers to the "last-minute appointment of sentencing counsel." Appellate counsel states that Defendant's trial counsel left the public defender's office at some point prior to sentencing. As the trial court noted, Defendant and the public defender's office had four months' notice of the date of sentencing. The State observes in its appellee brief that sentencing counsel, Paul Barker, was appointed on May 19, 2023. Thus, he was appointed more than a month before the July 6, 2023 sentencing hearing.

Louisiana courts generally review a denial of a motion for continuance for abuse of discretion, requiring the defendant alleging such an error to demonstrate prejudice. "The trial court's denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice." *State v.*

17

*Moore*, 40,311, p. 9 (La.App. 2 Cir. 1/13/06), 920 So.2d 334, 342, *writ denied*, 06-2267 (La. 6/1/07), 957 So.2d 167. *See also State v. Melancon*, 17-944 (La.App. 3 Cir. 4/18/18), 243 So.3d 676; *State v. McCoil*, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120.

Defendant has not demonstrated any prejudice to his case. His argument centers around his characterization of sentencing counsel's appointment as "last-minute." He also states, "It is not clear what day he was appointed." We note that this statement is incorrect, as the appointment letter for sentencing counsel appears in the record, indicating that Mr. Barker was appointed more than a month before the sentencing hearing.

In the absence of any showing of prejudice, we find that the trial court did not abuse its discretion by denying the motion to continue the sentencing hearing. As such, this assignment of error lacks merit.

## DECREE

For the foregoing reasons, Defendant's convictions and sentence are affirmed.

**AFFIRMED.**